**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

In Re: Barry K. and Dana M. Kellerman
Bankruptcy No. 4:09-bk-13935

BARRY K. KELLERMAN and                                                                          APPELLANTS
DANA M. KELLERMAN

v.                                                  No. 4:15CV00347 JLH

RANDY RICE, Trustee;
and ARVEST BANK                                                                                  APPELLEES

**MEMORANDUM OPINION**

      This is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Arkansas sustaining the Trustee's and creditor Arvest Bank's objections to the debtors' claim of an exemption for Barry Kellerman's individual retirement account. The bankruptcy court found that the IRA had entered into transactions with Panther Mountain Land Development, LLC, that were prohibited by the Internal Revenue Code and therefore the Kellermans could not claim the IRA as exempt. The Kellermans elected to appeal the decision to this Court, rather than the bankruptcy appeal panel, pursuant to 28 U.S.C. § 158(a)(1).

      The relevant events are not seriously in dispute and are accurately described in the bankruptcy court's opinion. Document #6-6 at 44-57.

      Prior to filing for bankruptcy protection, Barry Kellerman created the IRA, which had a reported value as of October 27, 2008, of $252,112.67. Document #6-5 at 1. The administrator of the IRA is Entrust Mid South, LLC. Document #6-2 at 45. The IRA is self-directed by Barry Kellerman who made all of the decisions pertinent to the issues raised in the objections. *Id.* at 29-30. At the commencement of their bankruptcy case, the Kellermans valued the IRA at $180,000 and claimed it as exempt under 11 U.S.C. § 522(d)(12). Document #6-4 at 8.

Arvest and the Trustee objected to the debtors' claimed exemption in the IRA because, they contended, it was no longer exempt from taxation under the Internal Revenue Code at the commencement of the case and thus was not eligible under 11 U.S.C. § 522(d)(12). They argued that the IRA lost its exempt status in 2007 when Barry Kellerman directed the IRA to engage in prohibited transactions involving disqualified persons as defined by the Internal Revenue Code.

The transactions at issue involved the acquisition and development by the IRA and Panther Mountain of approximately four acres of real property. Barry Kellerman and his wife, Dana, each own a 50% interest in Panther Mountain. Document #6-6 at 28. The address for Panther Mountain is the same as Barry Kellerman Construction, Inc. Document #6-4 at 32. Barry Kellerman is also a co-debtor on a number of debts with Panther Mountain. *Id.* at 23.

In order to acquire and develop the four-acre tract, the IRA and Panther Mountain executed a Partnership Agreement on August 8, 2007. Document #6-6 at 41-43. Barry Kellerman executed the Partnership Agreement on behalf of Panther Mountain. *Id.* at 43. Jerry O. Pearson, Jr. executed the Partnership Agreement on behalf of the IRA. *Id.* Barry Kellerman is the only person designated to sign partnership checks. *Id.* at 42. The partnership took the name Entrust Mid South LLC FBO Barry Kellerman IRA #0605002-01 and Panther Mountain Land Development, LLC ("Entrust Partnership"). Document #6-6 at 41.

The Partnership Agreement provided that the IRA would contribute capital by delivering the real property as a Noncash Contribution valued at $122,830.56. *Id.* The IRA also was supposed to contribute a cash contribution of $40,523.93 by November 30, 2007. *Id.* Panther Mountain's obligation was a cash contribution of $163,354.49 (an amount equal to the IRA's cash and noncash contributions) at an unspecified construction completion date. *Id.*

In a Buy Direction Letter dated August 8, 2007 Barry Kellerman directed Entrust to buy the four-acre tract through Standard Abstract & Title Co. for a purchase price of $122,830.56. Document #6-6 at 37. One day later, Barry Kellerman directed the IRA to liquidate assets in the amount of $123,000. Document #6-6 at 35-36. The Sell Letter explains the relationship between Barry Kellerman and Entrust:

> I understand that my account is self-directed and that Entrust . . . will not review the merits, legitimacy, appropriateness and/or suitability of any investment in general, including, but not limited to, any investigation and/or due diligence prior to selling any investment, or in connection with my account in particular. . . . I understand that neither the Administrator nor the Custodian determine whether this investment is acceptable under the Employee Retirement Income Securities Act (ERISA), the Internal Revenue Code (IRC), or any applicable federal, state, or local laws, including securities laws. I understand that it is my responsibility to review any investments to ensure compliance with these requirements.

Document #6-6 at 35. Additionally, the Sell Letter states:

> I am directing you to complete this transaction as specified above. I confirm that the decision to sell is in accordance with the rules of my account, and I agree to hold harmless and without liability the Administrator and/or Custodian of my account under the foregoing hold harmless provision.

Document #6-6 at 36. The terms contained in the Buy Direction Letter mirror the exculpatory and disclaimer language found in the Sell Letter.

The purchase of the four-acre tract closed on August 8, 2007. Document #6-4 at 42-43. An effect of the purchase was to provide sewer access to nearby tracts of approximately 80 and 120 acres owned by Panther Mountain. Document #6-2 at 36-40. While the four-acre tract could be independently developed, controlling it therefore substantially assisted in the development of the other Panther Mountain properties. *Id*. The IRA funded the entire purchase price. Document #6-6 at 35-37 and Document #6-5 at 3-4. The Warranty Deed from Maumelle Development, LLC dated August 8, 2007, did not convey the property to the Entrust Partnership; rather, the deed conveyed

the tract to the IRA and Panther Mountain with each owning an undivided one-half interest. Document #6-4 at 42-43. The one-half interest is the sole remaining asset in the IRA. Document #6-2 at 20. The IRA's October 27, 2008, Account Statement reflects the purchase of the real estate as a purchase of an asset of the IRA without reference to its divided interest. Document #6-5 at 4.

On December 5, 2007, the IRA, as a "Business Expense," paid $40,523.93 to develop the property. *Id*. Barry Kellerman described this expenditure as design and engineering expenses. Document #6-2 at 26. The IRA paid an additional "Business Expense" of $411.82 on October 15, 2008. Document #6-5 at 4. On his individual bankruptcy schedules, Barry Kellerman shows distributions from the IRA of $12,349.99 in 2009 and $124,100.74 in 2008 but none in 2007. Document #6-4 at 28.

Shortly after the Kellermans commenced their bankruptcy proceeding on June 30, 2009, Panther Mountain filed its own Chapter 11 bankruptcy on September 20, 2009. Document #6-6 at 1-34. On its schedules, Panther Mountain lists both the Kellermans and the IRA as unsecured creditors. *Id*. at 17-18. Two debts are reflected as owed to the IRA: (1) $163,000.00 with the claim described as "50% Interest in new entity," and (2) $7,891.96 with the claim described as "Loans from B Kellerman IRA to PMLD, LLC." *Id*. As the bankruptcy court stated, Barry Kellerman's testimony regarding the $7,891.96 debt was unclear. Kellerman alternatively characterized that debt as money that he and his wife paid personally for Panther Mountain or money that did, in fact, come from the IRA. Document #6-2 at 27-28. It is scheduled as a debt to the IRA and not a debt to the Kellermans.

The bankruptcy court found that the IRA engaged in prohibited transactions that caused it to lose its tax exempt status. Document #6-6 at 57. First, the bankruptcy court found that Panther

Mountain used the IRA as a lending source for the purchase price and development of the four-acre tract of land in violation of subsection 4975(c)(1)(B).  Document #6-6 at 55-56.  Secondly, the bankruptcy court found that Barry Kellerman transferred or used the IRA's assets for the benefit of disqualified persons and as a fiduciary dealt with the IRA's assets for his own interest in violation of subsections 4975(c)(1)(D) and (E).  Alternatively, the bankruptcy court found that Barry Kellerman dealt with the income as assets of the IRA as a fiduciary for his own interest in violation of subsection 4975(c)(1)(E).  Accordingly, the bankruptcy court concluded the debtors could not claim any interest in the IRA as exempt under 11 U.S.C. § 522(d)(12) of the United States Bankruptcy Code.  *Id.* at 57.

This Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*.  *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 808 (8th Cir. 2009).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left the definite and firm conviction that a mistake has been committed." *Tri-County Credit Union v. Leuang (In re Leuang)*, 211 B.R. 908, 909 (8th Cir. BAP 1997) (citations omitted).  "The allowance or disallowance of a claim of exemption is subject to *de novo* review." *Drenttel v. Jensen-Carter (In re Drenttel)*, 309 B.R. 320, 322 (8th Cir. BAP 2004).

Upon filing bankruptcy, all legal or equitable interest of the debtor in property becomes property of the bankruptcy estate subject to claims by creditors.  *Res-Ga Gold, LLC v. Cherwenka (In re Cherwenka)*, 508 B.R. 228, 234 (Bankr. N.D. Ga. 2014) (citing 11 U.S.C. § 541(a)(1)). Certain interests may be exempted from the bankruptcy estate.  *Id.*  A debtor's claim of exemption is "presumptively valid."  *Danduran v. Kaler (In re Danduran)*, 657 F.3d 749, 754 (8th Cir. 2011) (citing *Stephens v. Hedback (In re Stephens)*, 425 B.R. 529, 533 (B.A.P. 8th Cir. 2010)).  The

objecting party has the burden of proving the debtors' exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c) (2014). "If [the objecting party] meets this burden to produce evidence in support of the objection, the burden of production shifts to the debtor[s] to show that the claimed exemption is proper." *Danduran*, 657 F.3d at 754 (citing *Walters v. Bank of the West (In re Walters)*, 450 B.R. 109, 113 (B.A.P. 8th Cir. 2011)). The burden of persuasion remains with the objecting party who must prove his case by a "preponderance of the evidence." *In re Williams*, No. 09-43872-A-7, 2011 WL 10653865, at *2 (Bankr. E.D. Cal. June 3, 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

The United States Bankruptcy Code allows debtors to exempt "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section . . . 408 . . . of the Internal Revenue Code of 1986." 11 U.S.C. § 522(d)(12). Under 26 U.S.C. § 408(a), an individual retirement account is defined as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." Such a retirement account is exempt from taxation unless "during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year." 26 U.S.C. § 408(e)(2). The "individual for whose benefit any account was established is treated as the creator of such account." 26 U.S.C. § 408(e)(2)(A)(i). In this case, Barry Kellerman is the creator of the account. A disqualified person includes:

    (A) a fiduciary;

* * *

    (F) a member of the family . . . ;

>   (G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of–
>    (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all class of stock of such corporation,
>    (ii) the capital interest or profits interest of such partnership, or
>    (iii) the beneficial interest of such trust or estate, is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E).

26 U.S.C. § 4975(e)(2). A fiduciary is a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 26 U.S.C. § 4975(e)(3).

The bankruptcy court found that the Kellermans conceded at the hearing that they and Panther Mountain are disqualified persons under section 4975(e)(2), and they so conceded in their appeal. Document #6 at 7-8. Therefore, the finding will not be disturbed.

The remaining issue is whether the IRA engaged in prohibited transactions with disqualified persons. A prohibited transaction means any direct or indirect:

>   (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
>   (B) lending of money or other extension of credit between a plan and a disqualified person;
>   (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
>   (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
>   (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
>   (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c)(1). The disputed transactions are the (1) purchase of real property with IRA funds and subsequent conveyance of the real property to the IRA and Panther Mountain Partnership and (2) the cash contribution of $40,523.93 by the IRA to the Entrust Partnership. The Kellermans

argue that the purchase price for the land did not constitute a loan, the IRS never declared the IRA to have lost its tax exempt status due to prohibited transactions, the administrator of the IRA approved and signed off on the transaction, and current tax court law allowed Barry Kellerman to do business with his self directed IRA. Document #6 at 10.

As previously stated, Panther Mountain is a disqualified person. Any direct or indirect loan from the IRA to Panther Mountain is a prohibited transaction. The debtors argue that there is no evidence that the non-cash and cash contributions to the Partnership were loans to Panther Mountain, but that is not accurate. When Panther Mountain filed for bankruptcy it listed two debts to the IRA; one for $163,000 and the other for $7,891.96. Document #6-6 at 17-18. The record is unclear as to the purpose of the $7,891.96, but the $163,000 approximates Panther Mountain's contribution to the purchase and development of the four acres, which was held as an undivided one-half interest by the IRA and Panther Mountain, not by the partnership. Furthermore, Panther Mountain's bankruptcy schedule identified the IRA, not the partnership, as the entity to which the amount of $163,000 was owed. In addition, the purchase of the four acres gained access to sewer for two large tracts of land owned by Panther Mountain, which is significant circumstantial evidence that the purpose of the acquisition was to facilitate development of Panther Mountain's land. The entire price of this purchase, which provided a significant benefit to Panther Mountain, was paid with funds from the IRA.

To a large extent, whether the IRA's contribution to the land acquisition was a loan to Panther Mountain or a capital contribution to the partnership depends on the intent of Barry Kellerman at the time of the transaction. Because a determination of his intent is largely a

credibility determination, deference to the bankruptcy court's factual findings is particularly appropriate. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987).

The Kellermans also argue, based on Barry Kellerman's testimony at the hearing, that the value of the property was approximately $720,000, and that even subtracting development costs, was more than double the purchase price, so "the IRA's payment for the property did not and could possibly have [sic] constituted a loan to Panther Mountain." Document #9 at 5. They go on to state that the cash contribution was merely the IRA's contribution to the partnership and not a loan to the partnership. *Id.* The bankruptcy court observed Barry Kellerman's testimony and could judge his credibility. The fact that Barry Kellerman was the only witness does not mean that the bankruptcy court was bound to believe all of his testimony. *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997) (stating it is for the factfinder – the district court – to judge the credibility of the witnesses not the appeals court); Eighth Circuit Model Civil Jury Instructions 3.4 (2014). The bankruptcy court was not obligated to believe Barry Kellerman's testimony that a four-acre tract purchased for $122,830.56 was worth $720,000. Notably, no documents were introduced into evidence showing that Barry Kellerman, or anyone, had ever estimated the four acres as having a value substantially greater then the purchase price.

Even if the testimony is correct that the property was worth $720,000, that does not change the analysis. That a transaction is a prudent investment does not exempt it from the prohibited transactions list. *Leib v. C.I.R.*, 88 T.C. 1474, 1481 (1987). Furthermore, that the value of the property exceeded the amount paid by the IRA does not contradict the evidence that this is a loan.

Although the IRS made no determination that the IRA is tax exempt, that does not mean the bankruptcy court is unable to make such a determination. The IRS's decision is not binding on the

court, especially where the IRS has not considered the IRA for several years. *Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 307 (5th Cir. 2007).

The argument that the administrator approved and signed off on the transaction does not withstand scrutiny. The buy and sell letters dealing with this transaction specifically stated that Barry Kellerman understood "that neither the Administrator nor the Custodian determine whether this investment is acceptable under . . . the Internal Revenue Code (IRC)." Document #6-6 at 35.

The Kellermans argue that *Ellis v. Commissioner of Internal Revenue* is analogous to this case. However, in that case when the IRA invested in the LLC, the debtor did not have an interest in the entity and it was not a disqualified person. T.C. Memo. 2013-245, at *6 (Tax Court 2013). *Ellis* is not on point. Here, Barry Kellerman owned 50% of Panther Mountain when the loan was made.

Furthermore, even if the transaction at issue were not a loan, the IRA would still have lost its tax exempt status because the Kellermans and Panther Mountain benefitted directly from the transactions in violation of 26 U.S.C. § 4975 (c)(1)(D) and (E). The Kellermans each owned 50% of Panther Mountain. By purchasing the four acres, the Kellermans intended to develop that property and the adjoining property already owned by Panther Mountain. The Kellermans stood to benefit from the development of the four-acre tract and adjoining land owned by Panther Mountain into a residential subdivision. Barry Kellerman as a fiduciary dealt with the IRA's assets for his benefit, which caused the IRA to lose its tax exempt status.

The transactions occurred on August 8 and December 5 of 2007. Therefore, the IRA lost its exempt status as of January 1, 2007, which is prior in time to the filing of bankruptcy and the Kellermans cannot include the IRA as an exempt asset under 11 U.S.C. § 522(d)(12).

## CONCLUSION

This Court affirms the bankruptcy court's decision that the IRA is not an exempt property.

IT IS SO ORDERED this 14th day of September, 2015.

```
                           /s/ J. Leon Holmes
                           _____
                           J. LEON HOLMES
                           UNITED STATES DISTRICT JUDGE
```